IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CURTIS A. SMITH,**

    **Plaintiff,**

v.

**ILLINOIS ASSOCIATION OF
SCHOOL BOARDS, et al.,**

    **Defendants.**                                             **No.: 3-10-cv-00242-DRH-CJP**

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

Now before the Court are Illinois Association of School Boards' motion to bar plaintiff's damages computations (Doc. 118) and a motion in limine to preclude plaintiff from testifying as to damage computations (Doc. 119).[1] Plaintiff opposes the motions (Docs 136 & 137). Based on the following, the Court denies the motions. Before addressing the merits of the motions, the Court finds that it is necessary to set forth the discovery process as to damages. The following events relate to the discovery process on damages as presented by the parties' briefs.

On June 17, 2010, plaintiff served his Rule 26(a)(1) initial disclosures. The portion regarding damages states:

"Plaintiff seeks backpay; liquidated damages; punitive damages;

---

[1] A review of the pleadings indicates that these motions are intertwined and contain identical arguments regarding plaintiff's damage calculations. Thus, the Court finds it proper to address these motions in the same Order. Also, defendant Highland Community Unit School District No. 5 joins in these motions.

> placement into the position of Superintendent or, in the alternative, front pay, attorneys' fees; costs; and the injunctive relief described in his Complaint.
> Plaintiff's calculation of lost income, i.e. back and front pay is attached."

Thereafter, on July 29, 2010, plaintiff responded to a request of production with documents C. SMITH 28- 36. These documents are Smith's W-2s from the years 2008 and 2009, pay statements from SIUE, Smith's explanation of retirement benefits - SURS vs. TRS and a SURS benefit estimator form prepared by Smith, a TIAA CREF quarterly retirement portfolio statement from April 2010 to June 2010 and a July 2010 portfolio statement from Smith's Fidelity retirement account. On August 19, 2010, defendants deposed plaintiff. During the deposition, IASB's counsel asked Smith questions about his knowledge of retirement benefits and referred to documents C. SMITH 31-36 when questioning plaintiff.

On January 12, 2011, plaintiff served a copy of his First Supplemental disclosures that included documents C. SMITH 84-84. These documents reflect the creditable earnings of Michael Sutton, Jeffrey Fritchtnitch and James Briscoe. On February 25, 2011, defendants again deposed plaintiff. During this deposition, no questions were asked about damages.

On April 1, 2011 at 12:25 p.m., IASB's counsel wrote an email to plaintiff's counsel stating:

> "I have agreed to give you an additional two weeks on the discovery supplement that was due on 3/28, in lieu, apparently, of an expert's report. That date will be 4/11. That is fine and I agreed to it. However, we need to have an arrangement that, depending on what you produce, that I may have to issue you some additional discovery either in the form of interrogatories or production request. Depending on what you

> produce, I will probably be able to issue something within 7-10 days, and you would have to respond rather quickly if you have the information, probably 7-10 days thereafter.
> Can we have such an agreement? Keeping in mind that, as I suspect, this will involve exchanges of information on the issue of damages rather than on the issue with liability, and as such, supplemental exchanges as I believe may be necessary will not interfere with the 6/23 MSJ due date. So, please confirm that you are ok with this. Thanks."

In response, plaintiff's counsel stated that she is "ok with it." Thereafter on April 4, 2011, plaintiff's counsel wrote the following email that contained an attachment:

> "Everyone, here are the calculations that Curt Smith has performed supporting his claim for damages. I believe they are self-explanatory, but will be glad to answer specific questions."

The attachment contained a copy of Smith's spreadsheet calculations. Another round of emails were exchanged regarding the format of the attachment. In the last email, plaintiff's counsel wrote: "It's the .xls file I got from Curt. Open when you get to the office to make sure."

On April 8, 2011, plaintiff supplemented its disclosures again with documents C. SMITH 156-162. These documents are the spreadsheet information previously provided to defense counsel in the April 4, 2011 email. On May 17, 2011, plaintiff served its third supplemental disclosures that included documents C. Smith 163-176. These documents are "The School District Financial Profile" of the Illinois State Board of Education, emails between plaintiff and Walt Warfield and plaintiff's redacted phone records from October 6, 2007 to December 7, 2007.

On August 1, 2011, counsel for IASB emailed plaintiff's counsel and asked

about the attachment regarding damages contained in the original disclosures.

As to the motion to bar, defendant Illinois Association of School Boards ("IASB") first argues that plaintiff's damages computations must be barred because plaintiff failed to comply with the Mandatory Requirements of Federal Rule of Civil Procedure 26(a)(1)(A) in that plaintiff simply produced two spreadsheets and a summary table prepared by an unidentified person with no evidentiary documents or materials to support the computations. Plaintiff responds that he did comply with Rule 26(a)(1) and that IASB ignores the provisions of Rule 26(e) requiring supplementation of disclosures.

Under Rule 26, plaintiffs have an obligation to provide defendants with the names of witnesses likely to have discoverable information that plaintiffs may use to support their claims, along with the subjects of the witnesses' information. Fed.R.Civ.P. 26(a)(1)(A)(I). Plaintiffs also have a continuing obligation to supplement their initial disclosures. Fed.R.Civ.P. 26(e)(1)(A). Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure requires litigants to disclose to one another "a computation of each category of damages claimed by the disclosing party—who must also make available ... the documents or other evidentiary material ... on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Rule 26(e)(1) requires parties to supplement their initial disclosures as more information becomes available to them. If a party does not follow these rules, "the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

justified or was harmless." Fed.R.Civ.P. 37(c)(1). Whether a failure to comply with Rule 26(a) or (e) is substantially justified, harmless, or warrants sanctions is left to the broad discretion of the district court. *David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir. 2003); *cf.* Fed.R.Civ.P. 37(c)(1)(A)–(C) (listing sanctions courts may impose).

Based on the circumstances of this case, the Court concludes that plaintiff did not violate Rule 26(a)(1) or Rule 26(e)(1). At the time of the initial disclosures, it appears that plaintiff intended to attach a spreadsheet as to damages to the disclosures. Upon receiving the disclosures, defendant did not notify plaintiff that it did not receive the attachment.[2] Plaintiff supplemented its discovery three times in this case as required under Rule 26(e). On July 29, 2010, plaintiff produced documents in support of his damage calculations including calculations regarding retirement. The record reveals that early in the litigation defendant was on notice as to what plaintiff's damage claims were based upon as plaintiff was questioned about his damages during the first deposition.

Thereafter, on April 4, 2011, plaintiff supplemented his disclosures with a new spreadsheet containing his new calculations. According to the email, it was expected that IASB would be propounding written discovery if it needed elaboration of the damages. However, IASB did not propound written discovery on the damages issue. In fact, IASB's counsel did not raise with plaintiff or the Court its belief that the

---

[2]Further, it is difficult to ascertain from the record whether plaintiff did or did not attach the spreadsheet or that all the parties lost the original spreadsheet attachment.

Page 5 of 10

disclosures were insufficient. Rather, it appears that defendant preferred to "save" this issue for the motion to bar in hopes of prevailing on the damages issue based on a Rule 26 violation.

It is difficult to see how allowing Smith to present evidence as to his lost wages harms IASB. The theories upon which Smith claims for damages- back pay, front pay, liquidated damages and retirement - are not surprising for this type of case. Defendant does not described how it has been harmed by the discovery process on damages. Because the Court cannot see how IASB will be prejudiced, it cannot prevail on this motion. Defendant will have full advantage of cross examination and argument regarding weight and credibility.

As to the portions of both motions that ask the Court to preclude plaintiff from testifying about damages computations, IASB argues that the damages computation is one that is only admissible through expert testimony and that plaintiff has not disclosed an expert. Defendant contends that the numbers are not straightforward salary numbers, but rather projections of "creditable earnings" as would be determined by various State pension systems to compute retirement annuities. Plaintiff responds that an expert is not necessary; that under Evidence Rule 701 he is competent to testify as to his damages as the calculations are simple math and that plaintiff's future lost wages and pension benefits are equitable relief for the court to determine, not the jury. Although not argued by the plaintiff, salary and pension information are matters of public information, the plaintiff did argue his experience in education oversight positions, there has been extensive discovery in this case

regarding wage information as noted above. Wage loss determination, when one is not trying to impress a jury, is not a subject matter of particularly difficult substantive material and not an area where a credentialed expert is critical.

The Court acknowledges that there is case law for the proposition that expert testimony is necessary for the issue of future lost earnings.[3] However, a reading of those cases demonstrates that this proposition is not a bright line rule; rather the proper decision regarding whether expert testimony as to damages is necessary should be determined by the circumstances of the case.[4] Morever, Rule 701, which governs opinion testimony by lay witnesses, provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed.R.Evid. 701. Subsection (c) was added in 2000 to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed.R.Evid. 701 advisory

---

[3] Further, those cases are factually distinguishable from the case at bar.

[4] "[S]everal circuits have adopted the view that as long as the jury is properly instructed, expert testimony is not an absolute prerequisite to submitting to the jury the issue of future lost earnings and their reduction to present value." *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1347 (9th Cir. 1987)(citing *Bonura v. Sea Land Service, Inc.,* 505 F.2d 665, 668–69 (5th Cir. 1974); *Heater v. Chesapeake & O. Ry.*, 497 F.2d 1243, 1249–50 (7th Cir.), *cert. denied,* 419 U.S. 1013, 95 S.Ct. 333, 42 L.Ed.2d 287 (1974); *Duncan v. St. Louis-S.F. Ry.,* 480 F.2d 79, 87 (8th Cir.), *cert. denied,* 414 U.S. 859, 94 S.Ct. 69, 38 L.Ed.2d 109 (1973); *Baynum v. Chesapeake & O. Ry.*, 456 F.2d 658, 660–61 (6th Cir. 1972); *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172 (11th Cir. 2002).

committee's notes for the 2000 amendments [hereinafter Notes to 2000 Amendments].  As a result, lay testimony must "result[ ] from a process of reasoning familiar in everyday life," as opposed to a process "which can be mastered only by specialists in the field." Notes to 2000 Amendments.  This does not mean that an expert is always necessary whenever the testimony is of a specialized or technical nature.  When a lay witness has particularized knowledge by virtue of his/her experience, he/she may testify-even if the subject matter is specialized or technical-because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702. *See* Notes to 2000 Amendments.

Here, Smith has a Bachelor's degree in Mathematics in 1968 from Ohio State. He taught math for five years in the Columbus City Schools.  From 1989 to 1990, he served as a consultant for the Ohio State Superintendents Association primarily in strategic planning but also in financial analysis.  From 2002 through 2007, Smith served as the chair of the financial oversight panel for the Livingston School District. In 1980, he served as superintendent in a school district of 1,000 students and then served as a superintendent in a school district of 4,500 students through 1989. Also, he has been a professor at SIU Edwardsville in Educational Leadership since 1990.

Based on plaintiff's background, the Court finds that he has the experience and the particularized knowledge to present evidence about his personal damages under Rule 701.  This is an area that plaintiff is familiar with and the computations do not require expert testimony as the computations appear to be straightforward and not

complex. The Court notes that a plaintiff seeking future lost earnings need only present sufficient evidence to establish those damages with reasonable certainty.

Further, as noted by plaintiff, the question of back pay is an equitable question to be resolved by the court, not a factual question to be resolved by the jury. 42 U.S.C. § 2000e-5(g); *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415 (1975); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 252 (1994); *David v. Caterpillar,* Inc., 324 F.3d 851, 866 97th Cir. 2003); *Doe v. Oberweis Dairy*, 456 F.3d 704, 714 (7th Cir. 2006)(stating in *dicta* "that back pay is an equitable remedy."). The same is true for front pay, which is an alternative to the traditional equitable remedy of reinstatement. *Hildebrandt v. Ill. Dept. of Natural Resources*, 347 F.3d 1014, 1031 n. 12 (7th Cir. 2003); *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 771 (7th Cir. 2006). However, the Court may empanel the jury as an advisory jury on the issue; or the parties may, with the Court's consent, agree that the jury will decide the issue. *Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 499-501 (7th Cir. 2000). Here, the Court concludes that the suitable method to determine these damage issues is for the Court to decide them without jury advice, if necessary.

Lastly, defendant argues that the damage computations must be barred because they are based on an erroneous assumptions contrary to the Illinois Pension Code. Specifically, IASB argues *inter alia* that plaintiff cannot transfer more than two years of his previous service in the Ohio state teachers retirement system to the Illinois Teachers Retirement System. Plaintiff responds that his damages computations properly interpret the Illinois Pension Code and are admissible and

that IASB is in essence moving for summary judgment on plaintiff's damages and that this argument was not included in its summary judgment motion so this argument is untimely.

As indicated above, the Court will determine the damages issue without the advice of the jury, if necessary.  Further, the Court is confident that it can assess/calculate the appropriate damages to be awarded based on plaintiff's submissions and the statutes involved.  The Court notes that it may entertain a request for additional briefing on the damages issue at the proper time.

Accordingly, the Court **DENIES** IASB's motion to bar plaintiff's computations damages (Doc. 118) and its motion in limine to preclude plaintiff from testifying as to damages computations (Doc. 119).

**IT IS SO ORDERED**.

Signed this 15th day of March, 2012.

David R. Herndon
2012.03.15
13:25:53 -05'00'

**Chief Judge**
**United States District Court**