# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CURTIS A. SMITH,**

    **Plaintiff,**

v.

**ILLINOIS ASSOCIATION OF
SCHOOL BOARDS, et al.,**

    **Defendants.**                                           **No.: 3-10-cv-00242-DRH-CJP**

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

### I. Introduction and Background

Now before the Court are defendants' motions for summary judgment (Docs. 82 & 98). Defendants maintain that they are entitled to summary judgment because there is no evidence, direct or circumstantial, that age was used as a criteria in screening the candidates for the Superintendent position; that plaintiff was not similarly situated to the six candidates who were chosen over him and that there is no evidence of retaliation. Plaintiff opposes the motions (Docs. 110 & 111). Based on the applicable case law and the following, the Court denies the motions.

In his complaint, plaintiff alleges defendant Illinois Association of School Boards ("IASB") is an employment agency which was seeking applicants on behalf of defendant Highland Community Unit District No. 5 ("Highland") for the position of superintendent. Plaintiff contacted defendant IASB about potentially applying for that position. Larry Dirks, an employee of defendant IASB, told plaintiff that Highland

was looking for someone younger for the Superintendent position. Plaintiff nonetheless submitted an application for the Highland position to defendant IASB. Defendant IASB did not forward plaintiff's name to defendant Highland. Defendant Highland eventually hired someone younger than plaintiff for the position.

Plaintiff expressed disapproval to a supervisor at IASB. After his complaint, plaintiff continued applying for positions through IASB but alleges he was omitted from consideration because of his opposition to these practices. On April 25, 2008, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging defendant IASB discriminated against him because of his age. He later filed an amended Charge adding a complaint against defendant Highland.

Thereafter, plaintiff filed suit against both IASB and Highland on April 2, 2010 (Doc. 2). The Complaint alleges that defendants IASB and Highland discriminated against him based on his age and that defendant IASB retaliated against him for opposing unlawful practices under the ADEA (Doc. 31). On February 10, 2011, plaintiff filed an amended complaint that changed the allegations to conform with discovery (Doc. 74).

## II. Facts[1]

Since 1990, plaintiff Curtis Smith has been employed as a professor of educational leadership with Southern Illinois University-Edwardsville. Smith has a

---

[1] The Court has carefully reviewed the parties' recitations of the facts. The Court has attempted to limit its discussion to those facts which are material to the issues in this case based upon the applicable law and those not in dispute.

Bachelor's degree in Mathematics in 1968 from Ohio State. He taught math for five years in the Columbus City Schools. From 1989 to 1990, he served as a consultant for the Ohio State Superintendents Association primarily in strategic planning but also in financial analysis. From 2002 through 2007, Smith served as the chair of the financial oversight panel for the Livingston School District. In 1980, he served as superintendent in a school district of 1,000 students and then served as a superintendent in a school district of 4,500 students through 1989. From 1993 to 1997, he served on the Edwardsville School Board and from 2002 to 2007 he chaired a financial oversight panel for a financially distressed downstate district.

Defendant IASB is an association of local school boards in Illinois that offers a service that recruits and selects superintendent candidates and places a majority of the superintendents in Illinois when a district hires a search firm. Its search and selection process includes conducting a needs assessment, collecting candidate information, assembling a list of recommended candidates and providing the school board with guidance in conducting interviews. The search format follows a standardized format.

Defendant Highland consists of one high school and six grade schools. In 2007, it contained 3,166 students, seven principals, five assistant principals, 214 teachers and 108 support personnel. At this time, the Highland School Board consisted of its president, Mark Hosto, a 14 year member whose occupations are truck driver, farmer, Lisa Hunsche, a 6 year member, occupation insurance agent, Jonathan Basden, a ½ year member, occupation Asst. V.P., Federal Reserve Bank,

Greg Basler, a 1.2 year member, occupation CEO, Chris English, a member for less than a month, occupation Engineer, Rene Friedel, a 3 year member who is a community volunteer and Joyce Zerban, a ½ year member that is a retired teacher.

In 2007, Highland retained IASB to assist in the search for a new superintendent.[2] The IASB consultants that performed the search for Highland were Larry Dirks, Dave Love and Doug Blair. Blair is a former school superintendent and has been doing superintendent searches since 1978. He has chaired approximately 500 searches and served on search committees in an additional 200-300 searches. Dirks, the lead consultant on the Highland search. He has been the lead consultant on 15 searches and has served on the search committee for 63 searches. Love has been the lead consultant on around 50 superintendent searches and on the screening committee of about 100 others.

To determine the selection criteria applicable to the Highland search, IASB gave Highland school board members a list of 23 qualifications to rate on a 1-5 scale in order of importance. IASB complied the results and identified the board's top ten criteria. IASB relied on the board members' criteria to evaluate the candidates. The top ten qualifications listed in the board members' surveys match the ten criteria in the Highland brochure. The criterion in the survey most closely related to current or recent experience was item 22, "Successful administrative experience in a comparable district." The board approved the criteria without a reference to recent

---

[2]The retiring superintendent Marvin Warner had been hired from within. Warner had been a principal at the Highland Highschool and became assistant superintendent for six months before being promoted to superintendent.

experience and hired IASB to analyze and come up with a list of six candidates closely matching those criteria. IASB publicized the brochure in September 2007.

In 2007, at the age of 62, Smith applied for a superintendent vacancy with Highland through IASB. Smith e-mailed Blair to express his interest in the position and Blair directed him to Dirks. On October 17, 2007, Smith called Dirks and made an appointment to see Dirks at the IASB office in Springfield, Illinois. During these meeting, Smith and Dirks discussed his qualifications and what Highland was seeking. After this meeting, Smith and Dirks stopped by Blair's office and spoke to him for several minutes.

On October 30, 2007, Dirks, Blair and Love met to review the applications. The application packets included, among other things, an IASB form, "Personal Information Sheet;" transcripts; and resumes. They reviewed the 32 candidate information packets and ranked each candidate on their own before discussing the candidates as a group. IASB and Dirks, Blair and Love have stated different versions of the criteria used to screen the candidates. Dirks kept handwritten notes showing how he scored an applicant. The consultants tallied up the rankings and the group came to a consensus on the top candidates. A number of the candidates were not ranked. Love ranked Smith 2, however, Dirks and Blair did not rank him at all.

Love awarded six "1s" and six "2s". Five of Love's six "1s" were ultimately recommended to the Highland School Board. Love's "2," Chad Allison, was given a "1" by both Dirks and Blair and was recommended to the Board. Blair gave six "1s" and two "2s." Four of his six "1s" were recommended and both of his "2s" were

recommended to the Board. Dirks gave six "1s," three "2s" and six "3s." Five of his six "1s" were recommended to the Board, but only one of his "2s" was recommended to the Board and none of his "3s" was recommended to the Board.

Karen Perry (Highland offered her the job first) got a "2" from Blair and a "1" from both Dirks and Love. Michael Sutton (who got the job) got a "2" from Blair and a "1" from both Dirks and Love. The consultants agreed both Perry and Sutton were strong enough to make the final list. No candidate received three "1s." They did not recommend anyone who was not a "1" or a "2."

On November 6, 2007, Dirks presented the six recommended candidates to Highland in alphabetical order. All six candidates were current superintendents. The six candidates were 35, 36, 36, 44 and 54 years old. For the candidates that IASB provided age information, Dirks, Blair and Love rejected all 4 candidates born in the 1940's and 9 of the 10 candidates born in the 1950's. They also accepted 2 of the 3 candidates born in the 1960's and 3 of the 6 candidates born in the 1970's. The consultants could see or approximate the candidates' ages based on the materials in the application packets.

In November 2007, after IASB selected the Highland finalists, Smith testified that he called Blair and said: "I want you to know that when I met with Mr. Dirks he said that I think that they're looking for someone younger." Smith then stated: "I hope that I do not get screened out in the future because of my age." According to Smith, Blair responded: "You know, I think that you would be a great applicant in Quincy, they have been looking for a superintendent … and I'm from that area and

I think you would be a great fit for the job...." Blair told Smith to contact the person doing the search and tell him that Blair suggested that Smith call.[3] Thereafter, Blair told Dirks what Smith said about Dirks' comment regarding Highland's age preference. During his deposition, Blair answered the following to the question of what Dirks said in response: "I don't remember anything of substance. I think he was a little concerned."

Subsequently, Smith applied to six more districts. In December 21, 2007, Smith applied for a position with Altamont and on April 7, 2008, Smith applied for a position in Dekalb. IASB rejected plaintiff for both positions. Eventually, Smith filed a Charge of Discrimination with the IASB and participated in EEOC sponsored meditation with IASB. After this, IASB forwarded Smith's applications to school districts. Of the other five applications, Smith was recommended for interviews at 2 of the 5 (Dupo, 10/08 and Jersey, 3/09). He was not hired at these districts. As to the three districts that he was screened out, Altamont-01/08, Dekalb-04/08, and Herscher-12/08, he sued those districts for retaliation and claimed that he was being retaliated against for his complaint to Blair after the Highland screening. As to the application to Kankakee, his application to Kankakee was late and was returned to him. He sued Kankakee claiming retaliation. However, during that case IASB proved to Smith's satisfaction that the application was really late.

---

[3]In 2007, Quincy's enrollment in its 11 schools was 6,341 students.

## III. Summary Judgment

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Cain v. Lane,* 857 F.2d 1139, 1142 (7th Cir.1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir. 1989). Summary judgment will be denied where a reasonable jury

could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir. 1995).

### IV. Analysis

**AGE DISCRIMINATION**

The ADEA "prohibits employers from firing workers who are 40 or older on the basis of their age." *Martino v. MCI Communications Servs., Inc.*, 574 F.3d 447, 452 (7th Cir. 2009). Specifically, it "provides, in relevant part, that '[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Gross v. FBL Fin. Servs., Inc.*, --- U.S. ----, ----, 129 S.Ct. 2343, 2350, 174 L.Ed.2d 119 (2009) (quoting 29 U.S.C. § 623(a)(1)). "A plaintiff suing under the ADEA may show discrimination directly or indirectly, in the latter instance through the approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Martino*, 574 F.3d at 452. "In either case, the bottom-line question is whether the plaintiff has proved intentional discrimination." *Id.*

Ultimately, an ADEA plaintiff "must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross*, 129 S.Ct. at 2351. "In other words, proof that the plaintiff's age was a motivating factor, but not a determinative factor, in the employer's decision, will not suffice to establish the employer's liability." *Serwatka*

*v. Rockwell Automation, Inc.*, 591 F.3d 957, 961 (7th Cir. 2010). Under the IHRA, Illinois courts adopted the same standard employed by federal courts in actions for employment discrimination as articulated by the United States Supreme Court in *McDonnell Douglas*. *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill.2d 172, 178-179 (Ill. 1989).

## A. Direct Method

Under the direct method, plaintiff must produce direct or circumstantial evidence that she was discriminated against because of her age. *See Mach v. Will Co. Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009). "Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009) (quoting *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005)). "Direct evidence typically requires an admission of discriminatory animus, but a plaintiff may also produce circumstantial evidence that establishes the employer's discriminatory motive through a longer chain of inferences." *Mach*, 580 F.3d at 499.

Here, defendants argue that Smith has failed to wholly establish any direct evidence of discrimination; rather the evidence points to direct evidence of non-discriminatory practices and procedures. Specifically, defendants maintain that Dirks chose candidates that were most qualified for the position based on the Board's stated preferences and that Dirks' scoring sheet conclusively demonstrates that he evaluated plaintiff the same as the other candidates. Further, defendants maintain

that since Blair agreed that plaintiff did not merit an interview, Dirks' alleged stray comment played no role in the decision. Smith counters that he can establish age discrimination through the direct method in that Dirks, the leader of the Highland selection process, told him: "Well, I was just there earlier this week … and … I think they're looking for someone younger." Further, plaintiff contends that there is circumstantial evidence of age discrimination including, *inter alia*, that Dirk acknowledged that Highland wanted someone younger; Dirks' fabrication of a conversation with plaintiff after the selection, in which Dirks claims plaintiff asked him if the board was looking for someone younger; Dirks' fabrication of a conversation in October 2007 with plaintiff where Dirks claims that plaintiff brought up his age; Zerban's admission she stated at the September 6 board meeting that she wanted someone who would be with the district for a while and she wanted longevity; that Dirks could not recall board members stating any preference other than for someone with recent experience; some of the board members' denial that any preferences were given to Dirks outside the context of completing surveys and the three members' rejection of older applicants and acceptance of the younger ones.

Reviewing the statement and the facts in the light most favorable to Smith, the Court finds that the statement and circumstances of this case do seem to reference age. Smith has marshaled significant circumstantial evidence supporting his claims of age discrimination. According to plaintiff, Dirks, the leader of the Highland selection committee, told him that he believed that Highland was looking for someone younger. Dirks' alleged statement is admissible under Federal Rule of Evidence

801(d)(2) as a statement by a party's agent. Dirks was instrumental as he was 1 of 3 members and the leader of the selection committee and his employer, IASB, was hired by Highland to find an appropriate candidate for superintendent. Also, this statement tends to show Smith's state of mind with regard to the selection process. Highland hired IASB to select candidates that met its specific qualifications. According to Smith through Dirks' statement Highland wanted someone younger. There is evidence that appears to suggest that the district wanted someone younger. A jury could reasonably infer that Dirks shared Highland's alleged preference for a younger superintendent with the Blair and Love. Further, ASB's expert Dr. Bjork refers to Highland wanting a "modern" superintendent, which the jury could reasonably interpret as a code word for a younger superintendent. These issues turn on intent and credibility, which are questions for a jury to decide, not for the Court. As such, the alleged statement and circumstances do create issues of material fact as to whether Smith was discriminated because of his age. Thus, Smith submitted sufficient evidence on his age discrimination claim to withstand summary judgment. *Rudin*, 420 F.3d 712, 721 (7th Cir. 2005) (citing *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1397 (7th Cir. 1997)). Because Smith has successfully staved off summary judgment under the direct method, the Court need not also consider her claims under the indirect, burden-shifting method.

**RETALIATION**

A plaintiff succeeds in establishing unlawful retaliation under a direct method of proof by presenting evidence of (1) a statutorily protected activity, (2) an adverse

action, and (3) a causal connection between the two. *Id.* To succeed under the indirect method of proof, a plaintiff must demonstrate that he (1) engaged in protected activity, (2) subject to an adverse employment action, and (3) qualified for the positions wherein he was not recommended; and (4) treated less favorably than similarly situated employees who did not engage in protected activity. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006); *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Mere temporal proximity between protected conduct and an alleged retaliatory act will rarely be sufficient in and of itself to create a triable issue. *See Miller*, *v. Illinois Dept. of Transp.*, 643 F.3d 190, 201 (7th Cir. 2011). The analysis is the same under the IHRA for retaliation claims.

Here, IASB argues that Smith cannot make out a prima facie case of retaliation because there is no direct evidence of a causal connection between his protected activity and the adverse action. Defendant maintains that Smith must demonstrate a causal connection between his complaint to Blair and the failure of the search consultants to recommend him in subsequent searches. IASB contends that after Highland, he applied to five more districts (excluding his late application to Kankakee) and was recommended for interviews at two of the districts. Thus, IASB maintains that there is no connection. As to the indirect method, IASB argues that Smith fails as he has not offered any evidence that he was qualified where he was not recommended. Further, ISAB argues that Smith believes he was "screened out" and "screened in" for the same reason - his complaint to Blair, thus, his theory of

retaliation is unlcear. As to the direct method retaliation, Smith argues that there is causal connection in that when Blair told Dirks about Smith's complaint, Dirks was concerned in November 2007 and that in December 2007, plaintiff applied fro Altamont and was not "screened in" as a candidate. Plaintiff also contends that shortly thereafter, he applied for the DeKalb position through IASB and was not "screened in" as a candidate and that it was only after he filed a Charge of Discrimination with the EEOC and participated in EEOC mediation with IASB that IASB began to forward his name. Smith also responds that a jury could reasonably infer retaliation motivated IASB's decision to reject plaintiff for the Altamont and DeKalb positions.

Based on the circumstances of this case, the Court finds that there are disputes of material fact as to Smith's retaliation claim under the direct method that preclude summary judgment. He complained to Blair about Dirks' comment in November 2007 and shortly thereafter he was rejected for the Altamont position and similarly rejected for the DeKalb position. A jury could reasonably infer that retaliation motivated its decision to reject Smith for the Altamont and DeKalb positions. It also could reasonably infer that IASB knew that plaintiff was well-qualified for the positions; that it was not referring him because of his age and that it did refer him only after plaintiff complained about it, filed an EEOC charge and participated in mediation. Clearly, the Court cannot weigh the evidence or the credibility of the evidence; that is for the jury to determine. Thus, the Court denies IASB's motion for summary judgment on the retaliation claim as well.

### V. Conclusion

Accordingly, the Court **DENIES** defendants' motions for summary judgment (Docs. 82 & 98). The Court **SETS** this matter for final pretrial conference on Thursday, June 28, 2012 at 1:30 p.m. Further, the Court **DIRECTS** the parties to contact Magistrate Judge Stephen Williams' chambers to schedule a settlement conference.

**IT IS SO ORDERED.**

Signed this 28th day of March, 2012.

David R. Herndon
2012.03.28
22:07:09 -05'00'

**Chief Judge**
**United States District Court**